# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTOINETTE COLLAZO           : CIVIL ACTION
                             :
     vs.                     :
                             : NO. 08-CV-2520
OPTION ONE MORTGAGE CORP.,   :
ET. AL.                      :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                    **November 16, 2009**

This civil action has been brought before the Court for adjudication of the Defendants'[1] Motion for Judgment on the Pleadings. The motion shall be granted for the reasons given in the paragraphs which follow.

## Factual Background

Although the complaint is poorly pled, it appears that this case has its origins in a residential mortgage which the plaintiff, Antoinette Colazzo, obtained on September 25, 2000 from Defendant Option One Mortgage Corporation. At some point, which cannot be gleaned from the face of the complaint, the mortgage was sold and/or assigned to Defendant Wells Fargo Bank and thereafter, "in or around September 2002, Defendants wrongfully foreclosed upon Plaintiff when she was only

---

[1] Although filed by the attorney for Defendant Option One Mortgage Corporation only, he indicates that the motion is being filed on behalf of both Option One and Wells Fargo Bank, which the plaintiff identifies in her complaint as being the "Foreclosing Entity." (Complaint, ¶8).

approximately two (2) weeks behind on her mortgage." (Complaint, ¶s 8, 13). Purportedly, Option One's foreclosure action, which was instituted in January, 2003, contained certain "improper delinquency calculations" and deficient notices under various Pennsylvania statutes. It further appears that the plaintiff filed for some type of bankruptcy protection sometime between 2003 and 2006 and that she further filed an adversary action against Option One in 2006. (Complaint, ¶s 14, 19, 20). This adversary action was settled "in or around November 2006," and "Plaintiff and Defendants agreed to a settlement where Defendants would stop their foreclosure and send Plaintiff an accurate Act 6/91 Notice." (Complaint, ¶15).

The complaint further avers that "[o]n or about September 13, 2007," a second mortgage foreclosure action was filed by Wells Fargo against the plaintiff "based on the same loan already, subject to a default judgment," that this filing was somehow "wrongful," that as a result, a default judgment was entered against Plaintiff which resulted in a scheduled Sheriff's sale of the property, and that the plaintiff stopped the sale by again filing Bankruptcy and invoking the automatic stay of proceedings. (Complaint, ¶s 18, 21-23). Plaintiff further claims that she suffered injuries from the defendants' allegedly wrongful conduct "including but not limited to: (1) pain and suffering, including emotional distress and embarrassment; (2)

2

damages to credit rating and/or credit defamation; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss and/or possible loss of the premises; (5) attorneys fees and court costs; and/or (6) aggravation of a pre-existing condition(s)." (Complaint, ¶25). On the basis of these factual averments, Ms. Colazzo's complaint sought relief under the following state law theories: Slander of Title (Count I), Wrongful Use of Civil Proceedings and/or Dragonetti Act (Count II), Abuse of Process (Count III), Breach of Contract (Count IV), Negligence (Count VI), Fraud/Fraud on the Court (Count VII), and for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count X). Also included in the complaint are three counts for relief for violations of the following federal laws: (1) the Civil Rights Act, 42 U.S.C. §1983 (Count V); (2) the Fair Credit Reporting Act, 15 U.S.C. §1681, *et. seq.,* (Count VIII) and (3) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq*. (Count IX). The defendants filed Answers to the Complaint and now move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## **Standards Governing Rule 12(c) Motions**

Federal Rule of Civil Procedure 12(c) permits a motion for the entry of judgment on the pleadings to be made "after the pleadings are closed but within such time as not to delay the trial." Goebel v. Houstoun, Civ. A. No. 01-2386, 2003 U.S. Dist.

LEXIS 6588 at *3 (E.D. Pa. March 31, 2003). A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment. <u>Westport Insurance Corp. v. Black, Davis & Shue Agency, Inc.</u>, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007). Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. <u>Sikirica v. Nationwide Insurance Co.</u>, 416 F. 3d 214, 220 (3d Cir. 2005); <u>CoreStates Bank, N.A. v. Huls America, Inc.</u>, 176 F.3d 187, 183 (3d Cir. 1999). In ruling on such motions, the courts must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. <u>Sikirica</u>, <u>supra</u>.

Although Rule 12(d) provides in part: "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under rule 56...," the Third Circuit has held that "[m]erely attaching documents to a Rule 12(c) motion, however, does not convert it to a motion under Rule 56." <u>Citisteel USA, Inc. v. General Electric Co.</u>, No. 03-1197, 78 Fed. Appx. 832, 835, 2003 U.S. App. LEXIS 22288, *7 (3d Cir. Oct. 28, 2003). In ruling on such a motion, a trial court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's

4

claims are based on the document." Id., quoting PBGC v. White Consol. Indus., 998 F. 2d 1192, 1196 (3d Cir. 1993). (and discussing the recognized overlap of standards between a Rule 12(b)(6) motion to dismiss and Rule 12(c) motions). See also, Shelly v. Johns Manville Corp., 798 F.2d 93, 97, n.4 (3d Cir. 1986). "Further, in ruling on the motion, a court generally 'has discretion to address evidence outside the complaint...'" Citisteel, supra., quoting Pryoer v. NCAA, 288 F.3d 548, 558 (3d Cir. 2002). *In accord*, Tilbury v. Aames Home Loan, No. 06-1214, 199 Fed. Appx. 122, 125, 2006 U.S. App. LEXIS 22884 *8 (3d Cir. Sept. 7, 2006) (noting that "[w]hen reviewing a complaint under Fed. R. Civ. P. 12(b)(6), a court may examine the facts as alleged in the pleadings as well as 'matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case.'" and citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85, n.2 (3d Cir. 1994)).

## **Discussion**

In moving for judgment on the pleadings, Defendants assert, *inter alia*, that the plaintiff's claims[2] are barred by the

---

[2] In the first sentence of her Memorandum of Law in Support of Plaintiff's Response in Opposition to the Motion for Judgment on the Pleadings, Plaintiff writes: "[s]trictly for efficiency (and not as an admission) Plaintiff concedes withdrawal of all of her causes of action except under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL" or "CPL")." We interpret this "concession" to mean that the Plaintiff has voluntarily withdrawn all of her claims for relief except for that contained in Count X of the Complaint.

5

Rooker-Feldman and claim preclusion doctrines and that Count X fails to state a cause of action under the Pennsylvania UTPCPL. We agree.

Under the Rooker-Feldman doctrine[3], federal district courts lack subject matter jurisdiction over actions in which relief is sought that would effectively "reverse a state court decision or void its ruling." S. Washington Avenue, LLC v. Wilentz, Goldman & Spitzer, P.A., 259 Fed. Appx. 495, 498, 2007 U.S. App. LEXIS 29356 (3d Cir. Dec. 31, 2007), quoting Taliaferro v. Upper Darby Twp., 458 F.3d 181, 192 (3d Cir. 2006). The Supreme Court has explained that this doctrine is narrow and confined to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the District Court proceedings commenced and inviting District Court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-1522, 161 L. Ed. 2d 454 (2005); Clark v. Beard, 288 Fed. Appx. 1, at *2, 2008 U.S. App. LEXIS 14570 at *2 (3d Cir. July 10, 2008). In other words, the doctrine applies only when a plaintiff asks a district court to redress an injury caused by the state court

---

[3] The Rooker-Feldman doctrine is the result of two Supreme Court cases. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). The doctrine precludes federal review of lower state court decisions, just as it precludes review of the decisions of a state's highest court. Port Authority PBA v. Port Authority of New Yorka and New Jersey Police Dept., 973 F.2d 169, 177 (3d Cir. 1992).

judgment itself - not when a plaintiff merely seeks to re-litigate a claim or issue already litigated in state court. Moncrief v. Chase Manhattan Mortgage Corp., No. 07-4145, 275 Fed. Appx. 149, 152, 2008 U.S. App. LEXIS 8779 at *5 (3d Cir. Apr. 23, 2008).

A claim is barred by Rooker-Feldman under two circumstances: first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In re Knapper, 407 F. 3d 573, 580 (3d Cir. 2005), quoting Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004). In either case, Rooker-Feldman bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims. Id.

Here, the essence of the defendants' Rooker-Feldman argument is that by bringing suit in this matter, the plaintiff is endeavoring to effectively reverse the outcome of the foreclosure proceedings brought against her and her property in Pennsylvania state court in which a default judgment was entered against her and her husband, foreclosure proceedings commenced and the property sold at Sheriff's Sale on June 17, 2008.[4] In support of

---

[4] This was some three weeks after the plaintiff instituted this lawsuit in this court on May 30, 2008.

7

the instant motion, Defendant urges us to follow the reasoning of our learned colleague, Judge Sanchez, in Laychock v. Wells Fargo Home Mortgage, Civ. A. No. 07-4478, 2008 U.S. Dist. LEXIS 57050 (E. D. Pa. July 28, 2008).  However, that case appears to be just one of several such cases instituted in this district by the plaintiff's attorney that are strikingly similar to the one now at hand insofar as the facts and the causes of action advanced are concerned.  See, e.g., In re Knapper, 407 F.3d 573 (3d Cir. 2005); Sherk v. Countrywide Home Loans, Inc., Civ. A. No. 08-5969, 2009 U.S. Dist. LEXIS 68628 (E. D. Pa. Aug. 6, 2009) and Andrew v. Ivanhoe Financial, Inc., Civ. A. No. 07-729, 2007 U.S. Dist. LEXIS 73023 (E. D. Pa. Sept. 28, 2007). See Also, Moncrief v. Chase Manhattan Mortg. Corp., No. 07-4145, 275 Fed. Appx. 149, 2008 U.S. App. LEXIS 8779, 2008 WL 1813161 (3d Cir. Apr. 23, 2008)(Nearly identical facts but Plaintiff acting *pro se*).  In each, the defendant lender(s) invoked the Rooker-Feldman doctrine in support of their motion for dismissal of the plaintiff's TILA, FDCPA, FCEUA, UTPCPL, fraud, negligence, etc. claims arising out of mortgage foreclosure actions in which default judgments had been entered and Sheriff's sales held.  In each, the District Court and/or the Third Circuit Court of Appeals dismissed those claims for the reason that subject matter jurisdiction was lacking as a consequence of Rooker-Feldman.  By way of example as noted by Judge Savage in Sherk, the question of whether the

lender:

> "had the legal right to foreclose on the mortgage loan"(s) at issue "has been determined in state court and cannot be reconsidered by a federal court."

2009 U.S. Dist. LEXIS at *21.

The Third Circuit made a similar observation in Knapper when it held that the plaintiff in that case:

> "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained. Therefore, she can not prevail on her federal claim without obtaining an order that would negate the state court's judgment[s]."

407 F.3d at 581.

Finally, to quote Judge Sanchez in Laychock:

> In Pennsylvania, a foreclosure judgment against the mortgagor means 'the mortgage is in default, that the mortgagors have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount. Cunningham v. McWilliams, 714 A.2d 1054, 1056-57 (Pa. Super. 1998)(internal citations omitted). A mortgage foreclosure also depends 'upon the existence of a valid mortgage. ... All her claims for monetary damages, except for TILA, HOEPA, and RESPA, would require me to decide Wells Fargo and Wachovia wrongfully double-debited her account and initiated a wrongful foreclosure against her. Such a decision requires me to find the Philadelphia Court of Common Pleas Judge's decision, [that] Laychock failed to make her monthly mortgage payments was wrong. ...[5] (citing Moncrief, 2008 U.S. App. LEXIS at *1-*2.)[6]

---

[5] Specifically, as to the UTPCPL claim in Laychock, the Court noted that the plaintiff there had to prove that Wachovia and Wells Fargo "engaged in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," citing 73 P.S. §201-2. Laychock, 2008 U.S. Dist. LEXIS at *21. "To find Wells Fargo and Wachovia engaged in fraudulent or deceptive conduct, I would have to find they wrongfully withdrew money from her account and wrongfully initiated the foreclosure proceedings." Id.

[6] In Moncrief, the plaintiffs had likewise been the defendants in a mortgage foreclosure action commenced against them and their home by their Mortgagor in state Common Pleas Court, to which they failed to respond and a

9

Laychock, at *7, *10.

In each of the foregoing decisions, the Court concluded that the plaintiff['s] claims in the federal action were "inextricably intertwined" with the state adjudication and thus the district court lacked subject matter jurisdiction to adjudicate each one of them.[7]  Attached to the defendants' motion here are copies of the docket entries from the Philadelphia Court of Common Pleas evincing that a judgment by default was entered on November 27, 2007 against the plaintiff in the mortgage foreclosure action brought against her by Wells Fargo Bank, that no appeal was taken from that judgment, that the property was sold at Sheriff's Sale on March 4, 2008 (Exhibit "B") and that an action in ejectment is

---

default judgment was entered against them.  Several years after the entry of the default, the subject property was sold at a sheriff's sale and an ejectment action was filed against the plaintiff by the purchaser.  It was only after the ejectment action was filed that the plaintiff filed suit in U.S. District Court alleging that the defendants had engaged in a mortgage fraud scheme and manipulated her into an illegal foreclosure so as to deprive her of their home.  Upon the defendants' motions to dismiss, the District Court dismissed the plaintiff's complaint under the Rooker-Feldman doctrine and the Third Circuit affirmed, reasoning that "[h]ere at least in part, Moncrief seeks redress from the state court's judgment in the foreclosure action.  Accordingly to the extent that Moncrief seeks to 'appeal from' the state court's foreclosure judgment, the District Court correctly dismissed the claim under Rooker-Feldman."  Moncrief, 275 Fed. Appx. at 153.

[7]  Just a few days ago, the Third Circuit re-affirmed the application of Rooker-Feldman to bar an adversary action where the relief sought was rescission of a previously foreclosed mortgage.  Noting that "a mortgage foreclosure action depends upon the existence of a valid mortgage," and that "a favorable decision for [the plaintiffs] in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage," the Third Circuit affirmed the holdings of the Bankruptcy and the Eastern District Court that Rooker-Feldman precluded their jurisdiction over the plaintiff's rescission claim because it was inextricably intertwined with the Common Pleas Court's foreclosure judgment.  Madera v. Ameriquest Mortgage Co., No. 08-2205, 2009 U.S. Dist. LEXIS 24804 at *8 (Nov. 12, 2009).

pending against the plaintiff (Exhibit "C"). In Count X of her Complaint, the plaintiff seeks the following relief from the Court ostensibly under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-1(v), 201-2(xxi) and 201-3.1:

> (a) Rescission of the loan, including a declaration that Plaintiffs are not liable for any finance charges or other charges imposed by Defendants;
>
> (b) Termination of any security interest in Plaintiffs' property which may have been created under the loan;
>
> (c) Return of any money or property given by Plaintiffs to anyone, including Defendants, in connection with the transaction;
>
> (d) Statutory damages;
>
> (e) Forfeiture and return of loan proceeds;
>
> (f) Damages, including (i) actual damages; (ii) treble damages, (iii) attorneys fees and expenses, and costs of suit and (iv) punitive damages.

Pl.'s Compl., ¶54(VI).

Given that the nature of the relief sought under subparagraphs (a), (b) and (e) of Count X would require this Court to find that the judgment by foreclosure was entered erroneously, we conclude that we lack the requisite subject matter jurisdiction under the Rooker-Feldman doctrine to adjudicate those portions of the plaintiff's sole, remaining (UTPCPL) claim. The motion for judgment on the pleadings shall therefore be granted as to subparagraphs (a), (b) and (e) of Count X on the grounds of the Rooker-Feldman doctrine.

As to the remaining portions of Plaintiff's UTPCPL claim, we find that they are also barred, *albeit* by the claim preclusion doctrine. Indeed, for claim preclusion, also known as *res judicata* to apply, there must have been a final judgment on the merits in a prior suit involving the same parties or their privies and a subsequent suit based on the same cause of action. Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 973, 59 L. Ed. 2d 210 (1979); Color-Plus Leather Restoration System, LLC v. Vincie, Civ. A. No. 04-1925, 198 Fed. Appx. 165, 167 (3d Cir. Oct. 3, 2006). Pursuant to the doctrine of *res judicata*, "any final valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." Williams v. Wells Fargo Home Mortgage, Inc., Civ. A. No. 06-3681, 2006 U.S. Dist. LEXIS 93860 (E. D. Pa. Dec. 29, 2006), quoting R/S Financial Corp. v. Kovalchick, 552 Pa. 588, 716 A.2d 1228 (1999).[8]

Claim preclusion applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause

---

[8] We apply the federal law of *res judicata* in resolving this motion inasmuch as the prior action upon which invocation of the doctrine is based occurred in federal, bankruptcy court. See, e.g., RegScan, Inc. v. Brewer, Civ. A. No. 04-6043, 2006 U.S. Dist. LEXIS 6412 at *15 (E.D. Pa. Feb. 17, 2006), citing Allegheny International v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994). This is a distinction without a difference, however, as the test for the application of *res judicata* is essentially the same under Pennsylvania law as under federal law. See, Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991); Radacovich v. Radacovich, 2004 Pa. Super. 82, 846 A.2d 709, 715 (Pa. Super. 2004); RegScan, Inc., supra; Tyler v. O'Neill, 52 F. Supp. 2d 471, 474, n. 1 (E.D. Pa. 1999).

of action. Rouse v. II-IV, Inc., No. 08-3922, 2009 U.S. App. LEXIS 10506 at *16 (3d Cir. May 14, 2009); Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006); Balent v. City of Wilkes-Barre, 542 Pa. 555, 669 A.2d 309, 313 (1995). In this way, the doctrine of *res judicata/*claim preclusion is intended to ensure the finality of judgments and prevent repetitive litigation. Brown v. Felsen, 442 U.S. 127, 131, 99 S. Ct. 2205, 2209, 60 L. ed. 2d 767 (1979). It should be noted that two actions are generally deemed to be the same where there is an essential similarity of the underlying events rather than on the specific legal theories invoked. RegScan, supra., citing, *inter alia*, Gregory v. Chehi, 843 F.2d 111, 117 (3d Cir. 1988). The courts should therefore look to whether the acts complained of and the demand for relief are the same; whether the theory of recovery is the same, whether the witnesses and documents necessary at trial are the same, and whether the material facts alleged are the same. Id.

Applying these principles to the matter at hand, we observe that, in subparagraphs (c), (d) and (f) of Count X, Ms. Colazzo seeks monetary damages, counsel fees and the return of any money or property "given ... in connection with the transaction." Clearly, these damages and/or the plaintiff's alleged entitlement to them could have been sought and/or asserted as a defense and offset in the underlying mortgage foreclosure action. Plaintiff,

however, apparently elected not to do so, in that she chose to file this, separate action instead of an answer with counterclaims in state court.  The consequence of that decision, however, is that she is precluded from bringing them now.

Given these findings, we see no need to address the defendants' remaining challenge to the sufficiency of the plaintiff's pleading of Count X as we now enter the attached order granting the motion for judgment on the pleadings.